UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REX CARVER,<br><br>    Plaintiff,<br><br>v.<br><br>BETSY DeVOS,[1] Secretary of the U.S. Department of Education, et al.,<br><br>    Defendants. | Case No. 3:19-cv-00191<br><br>Chief Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:    The Honorable Waverly D. Crenshaw, Jr., Chief District Judge

### **REPORT AND RECOMMENDATION**

Before the Court in this action brought under the Administrative Procedure Act (APA), 5 U.S.C. § 702, are Plaintiff Rex Carver's and Defendants Secretary of Education Betsy DeVos and the United States Department of Education's cross motions for judgment on the administrative record of Carver's multiple attempts to discharge his student loan debt. (Doc. Nos. 40, 44.) The Court has referred these motions to the Magistrate Judge for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 47.) Carver seeks to discharge his federal student loan debt under 20 U.S.C. § 1087(c)(1) and 34 C.F.R. § 685.215(a)(1), which provide for loan discharge if

---

[1]    Betsy DeVos resigned as Secretary of the U.S. Department of Education effective January 8, 2021. *Betsy DeVos Resignation Letter*, Wash. Post (Jan. 7, 2021), https://www.washingtonpost.com/context/betsy-devos-resignation-letter/cfd93504-2353-4ac3-8e71-155446242dda/?itid=lk_interstitial_manual_7. The Acting Secretary of Education is Phil Rosenfelt. Press Release, The White House, *President Joe Biden Announces Acting Federal Agency Leadership* (Jan. 20, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/01/20/president-joe-biden-announces-acting-federal-agency-leadership/. Rosenfelt is automatically substituted as a defendant in this action under Federal Rule of Civil Procedure 25(d). Fed. R. Civ. P. 25(d).

a school falsely certified a student's eligibility to borrow, including by certifying a student whose criminal record would bar him or her from employment in the occupation for which the educational program supported by the loan was intended. *See* 20 U.S.C. § 1087(c)(1); 34 C.F.R. § 685.215(a)(1). Upon consideration of the parties' arguments, the relevant statutory and regulatory provisions, and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the defendants' motion for judgment on the record be denied and Carver's motion be granted.

## I. Background

### A. Factual Background[2]

#### 1. Carver's Criminal History and Enrollment at Keiser University

In 1989, a Florida court convicted Carver of being a principal to robbery with a deadly weapon, burglary of a conveyance while armed, and battery.[3] (AR 59–60.) He received a twelve-year sentence and was released from custody in March 1997. (AR 61–65.) In April 1997, Carver enrolled in the medical laboratory technician associate of science degree program at Keiser University in Fort Lauderdale, Florida. (AR 107, 108.) In the process of enrolling, Carver told his Keiser admissions counselor, Rosalind Wald, about his criminal record. (AR 81–83, 107.) Carver remembers "asking [Wald] if [his] felony convictions would prevent [him] from obtaining a license to work in the field of study that [he] was enrolling in" and Wald responding "that it would

---

[2] The facts in this section are drawn from the Administrative Record (Doc. No. 23-1), which is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page. Defendants have submitted a sworn declaration certifying that the AR contains the full administrative record for the seventh and eighth denial letters. (Doc. No. 42.)

[3] Carver's statutes of conviction are: Fla. Stat. Ann. § 812.13 (1989); Fla. Stat. Ann. § 810.02 (1989); and Fla. Stat. Ann. § 784.03 (1989). (AR 59.) The robbery and burglary charges are felonies; the assault charge is a misdemeanor.

not . . . ." (AR 82.) Wald remembers Carver telling her about his criminal record, but recalls the rest of the conversation differently. According to Wald, Carver "told [her] up front about the felony" and she told him "that a felony would make it difficult for [him] to become employed in the field." Wald recalls Carver responding that his record "was not going to stand in [his] way." (AR 81–82.) Wald did not tell anyone else at Keiser about Carver's criminal history. (AR 81–83.)

Carver obtained federal direct Stafford loans under the William D. Ford Federal Direct Loan Program in May 1997, August 1997, and January 1998. (AR 91, 183–84.) In September 1998, Carver learned that his felony convictions would prevent him from obtaining the internship required to complete the medical laboratory technician program and would prevent him from obtaining a medical laboratory technician license in Florida. (AR 91–92.) He switched his enrollment to Keiser's computer programming associate of science degree program and obtained additional federal direct Stafford loans in October 1998 and June 1999. (AR 106, 183.) Carver's enrollment at Keiser ended in 1999. (AR 24.) He did not earn a degree. (AR 22.)

### 2. Carver's 2013 Application and DOE's Seventh Denial

On January 16, 2013, with the help of an attorney at the Legal Aid Society of Middle Tennessee and the Cumberlands, Carver submitted an application to the Department of Education (DOE) for loan discharge under 34 C.F.R. § 685.215(a)(1)(iii) (2013).[4] (AR 90–130.) Carver's application requested "loan discharge based on false certification due to a disqualifying status," his "[c]riminal record[.]" (AR 95.) Carver argued that Florida laws in place in 1997 did not permit someone with his criminal convictions to obtain the license necessary to work as a medical laboratory technician. (AR 91–92.) In response to questions on the application form, Carver stated

---

[4] Carver submitted several loan discharge applications between 2006 and 2018, all of which were denied. (Doc. No. 42.) The Court has dismissed Carver's claims regarding all but the seventh and eighth denial letters. (Doc. Nos. 35, 36.)

that Keiser did not "ask [him] . . . if the disqualifying status . . . existed" at the time of his enrollment, but that he had "inform[ed] the school of the disqualifying status before the loan was certified or originated[.]" (AR 95.)

In considering Carver's application, DOE reviewed records that Carver provided and his earlier applications for loan discharge. (*See* Doc. No. 42.) It also solicited records from Keiser regarding Carver's disqualifying status and loan certification. (AR 175, 197.) In response to DOE's inquiry, Keiser employee Fred Pfeffer[5] stated that:

> [T]he record retention regulation causes us not to have a file on [Carver]. If [he] made [the] institution aware of [his] background[,] [he] would have been advised to change major, it is up to the student to decide what program of study they want to go into. [Carver] would have signed a release on the institution for placement due to background. The institution does not guarantee placement, that is up to the student to obtain employment. The institution helps prepare resume[s] and interview techniques. This student has defaulted on his obligation and is now trying to get out of his responsibility.

(AR 175.)

On November 18, 2013, DOE denied Carver's loan discharge application for the seventh time, explaining its reasoning as follows:

> You state that you had a condition that prevented you from meeting the requirements for employment in your field of study.
>
> A student borrower may be eligible for false certification discharge if at the time of enrollment the borrower had a physical, mental, or legal status or condition that would have prevented the borrower from satisfying the requirements needed for employment in his or her field of study.
>
> Schools are required only to certify at the time of enrollment that student borrowers have sufficient ability to benefit from the training offered. Keiser University has certified that you did not make the school aware of the condition prior to

---

[5] Pfeffer's position with Keiser is not stated. The Court assumes his employment at Keiser because he corresponds from a Keiser University email account (AR 175) and historical notes from DOE's "Debt Management Collection System (DMCS)" (Doc. No. 23-1, PageID# 78) related to Carver's applications show that DOE "[e]mailed FREDERICK PFEFFER at Keiser University" regarding Carver's "false certification disqualifying status" (AR 197).

enrollment. If you had, you would have been advised to change your major or remain in the same program of study and sign a release on the institution for placement due to background. You are not entitled to false certification loan discharge based on a condition that the school was not aware of at the time of enrollment. Employment in the field of study is not guaranteed, and your ability to find employment in the field of study may not be used as a condition of repayment.

(AR 131.)

### 3. Carver's 2018 Application and DOE's Eighth Denial

In November 2018, Carver submitted another application to DOE for false certification discharge based on his criminal record under 34 C.F.R. § 685.215(a)(1)(iii) (2018). (AR 1–3.) Carver once again stated, in response to questions on the application form, that Keiser did not "ask [him] . . . if the disqualifying status . . . existed" at the time of his enrollment, but that he had "inform[ed] the school of the disqualifying status before the loan was certified or originated[.]" (AR 1.) On November 20, 2018, DOE denied Carver's discharge application for the eighth time, explaining its reasoning as follows:

> You state that you had a condition that prevented you from meeting the requirements for employment in your field of study.
>
> A student borrower may be eligible for false certification discharge if at the time of enrollment the borrower had a physical, mental, or legal status or condition that would have prevented them from satisfying the requirements needed for employment in his or her field of study. Although, you state you did inform Keiser University of the disqualifying status before the loan(s) was certified or originated, you provided supporting documents that identified the fact that you were made aware that this would be a difficult field of study. You also provided a pamphlet that stated a background check was required for the field of study as a pre-requisite. Unfortunately, you are not entitled to false certification loan discharge.
>
> In the event that the supporting evidence submitted with your discharge application is insufficient for processing and/or approval, standard collection activity will resume.

(AR 185.)

### B. Procedural History

Carver initiated this action under the APA, 5 U.S.C. § 702, on March 1, 2019, alleging that DOE's nine denials of his student loan discharge applications were arbitrary and capricious, abuses of discretion, and contrary to law. (Doc. No. 1.) Carver seeks reversal of the denials and an order compelling the defendants to stop collection on his federal direct loans and to discharge those loans under 20 U.S.C. § 1087 and 34 C.F.R. § 685.215. (*Id.*)

On October 31, 2019, the defendants filed the administrative record (Doc. No. 23-1) and a motion to dismiss Carver's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted (Doc. No. 22). The defendants argued that Carver's claims regarding the first five denials were barred by the relevant statute of limitations and that his remaining claims failed on the merits because the administrative record supported those denials. (Doc. No. 23.) Carver responded that the defendants' stated reasons for the seventh and eighth denials were not supported by the administrative record and were arbitrary, capricious, and contrary to law. (Doc. No. 31.) Carver conceded that any challenges to the remaining denials were either untimely or failed on the merits. (*Id.*)

The Magistrate Judge issued a report and recommendation finding the dismissal of Carver's claims based on denials one through six and nine unopposed and finding that the Court's obligation to review the administrative record with respect to Carver's claims challenging the seventh and eighth denials would not be properly fulfilled in the Rule 12(b)(6) context in this case. (Doc. No. 35.) The Magistrate Judge recommended grating in part and denying in part the defendants' motion to dismiss without prejudice to the parties raising their respective arguments about denials seven and eight in motions for judgment on the administrative record or for summary judgment. (*Id.*) The parties did not object, and the District Judge approved and adopted the Magistrate Judge's report and recommendation on August 17, 2020. (Doc. No. 36.)

6

On November 16, 2020, the defendants certified that the administrative record filed with their motion to dismiss was complete as to the seventh and eighth denials and moved for judgment on that administrative record. (Doc. Nos. 40, 42.) The defendants argue that the seventh denial was not arbitrary and capricious because record evidence shows that Keiser was not aware of Carver's criminal record. (Doc. No. 41.) The defendants argue that the eighth denial was not arbitrary and capricious because Carver did not provide sufficient evidence that his convictions barred his employment as a medical laboratory technician or that Keiser knew of his convictions. (*Id.*)

Carver moved for judgment on the administrative record on November 17, 2020, arguing that the seventh and eighth denials were arbitrary and capricious because DOE's explanations for its decisions run counter to the record evidence and, with respect to the eighth denial, DOE relied on irrelevant factors. (Doc. Nos. 44, 45.) Carver also argues that Florida law in 1997 barred someone with his convictions from obtaining a medical laboratory technician license. (Doc. No. 45.) The parties responded in opposition to each other's motions for judgment on the record (Doc. Nos. 48, 49), and Carver filed an optional reply in support of his motion (Doc. No. 50).

**II.      Legal Standard**

The APA provides for judicial review of final agency actions. 5 U.S.C. § 702; *Sierra Club v. U.S. Forest Serv.*, 828 F.3d 402, 407 (6th Cir. 2016). Section 706 of "[t]he APA directs courts to 'hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Ky. Riverkeeper, Inc. v. Rowlette*, 714 F.3d 402, 407 (6th Cir. 2013) (quoting 5 U.S.C. § 706(2)(A)). An agency's decision is arbitrary and capricious if the agency

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (*State Farm*)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. Nevertheless, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). "The reviewing court 'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 474 (6th Cir. 2008) (quoting *State Farm*, 463 U.S. at 43). "Even when an agency explains its decision with 'less than ideal clarity,'" however, "a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

### III. Analysis

#### A. Statutory and Regulatory Background

Congress enacted 20 U.S.C. § 1087(c)(1) to address the discharge of student loan debt as part of the Higher Education Amendments of 1992 (HEA), Pub. L. No. 102-325, 106 Stat. 448. The provisions of the HEA were intended to curb rampant fraud and abuse by schools participating in federal student loan programs. S. Rep. No. 102-58 (1991); H.R. Rep. No. 102-447 (1992). Congress found that "a virtually complete breakdown in effective regulation and oversight had

opened the door for fraud, abuse, and other serious problems at every level." S. Rep. No. 102-58, at 11. Lawmakers were particularly concerned about "reports detailing the exploitation of students by unscrupulous schools, growing default costs, schools offering overpriced and inferior educational programs and schools and lenders with unacceptable default rates." H.R. Rep. No. 102-447, at 10; *see also* S. Rep. No. 102-58, at 10 (finding "that unscrupulous and dishonest school operators victimize students, leaving them with huge debts and little or no education").

In response to these concerns, Congress enacted "nearly 100 provisions to strengthen controls on schools and colleges to end waste and abuse and to minimize loan defaults." H.R. Rep. No. 102-447, at 10. One such provision is § 1087(c)(1). *See Jordan v. Sec'y of Educ.*, 194 F.3d 169, 170 (D.C. Cir. 1999) (holding that § 1087(c)(1) was enacted "in response to public concern about vocational schools that defrauded students by falsely certifying their ability to benefit and then providing them worthless training"); *Price v. U.S. Dep't of Educ.*, 209 F. Supp. 3d 925, 930 (S.D. Tex. 2016) (finding that § 1087(c)(1) was "spurred by public concern over unscrupulous schools exploiting student borrowers who received no benefit from expensive classes of little use").

At the time Carver applied for loan discharge and the defendants issued their seventh and eighth denials, § 1087(c)(1) provided that "the Secretary [of Education] shall discharge the borrower's liability on the loan (including interest and collection fees) by repaying the amount owed on the loan" if the borrower received a federal student loan on or after January 1, 1986, and the "student's eligibility to borrow under this part was falsely certified by the eligible institution . . . ." 20 U.S.C. § 1087(c)(1) (2013); 20 U.S.C. § 1087(c)(1) (2018). The regulation implementing § 1087(c)(1) with respect to direct federal loans is 34 C.F.R. § 685.215. The versions of that regulation relevant to this action provide that "[t]he Secretary discharges a borrower's . . .

obligation to repay a Direct Loan in accordance with the provisions of this section if a school falsely certifies the eligibility of the borrower . . . to receive the loan." 34 C.F.R. § 685.215(a)(1) (2013); 34 C.F.R. § 685.215(a)(1) (2018). Under this regulation, "[t]he Secretary considers a student's eligibility to borrow to have been falsely certified by the school if the school—"

> Certified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended.

34 C.F.R. § 685.215(a)(1)(iii) (2013); 34 C.F.R. § 685.215(a)(1)(iii) (2018). To apply for discharge under this section based on a disqualifying condition, a borrower shall "submit to the Secretary a written request and a sworn statement, and the factual assertions in the statement must be true." 34 C.F.R. § 685.215(c) (2013); 34 C.F.R. § 685.215(c) (2018). Borrowers must also state whether they have made a claim about a school's false certification to a third party and state the amount of any payment received as a result of that claim, 34 C.F.R. § 685.215(c)(5) (2013); 34 C.F.R. § 685.215(c)(5) (2013); agree to provide the Secretary, upon request, with "other documentation reasonably available to the borrower" supporting his or her application 34 C.F.R. § 685.215(c)(6)(i) (2013); 34 C.F.R. § 685.215(c)(6)(i) (2018); and agree to cooperate with the Secretary in enforcement actions, 34 C.F.R. § 685.215(c)(6)(ii) (2013); 34 C.F.R. § 685.215(c)(6)(ii) (2018). "If the Secretary determines that the borrower does not qualify for a discharge, the Secretary notifies the borrower in writing of that determination and the reasons for the determination." 34 C.F.R. § 685.215(d)(5) (2013); 34 C.F.R. § 685.215(d)(5) (2018).

### B. The Seventh Denial

DOE based its seventh denial of Carver's loan discharge application on grounds that Carver did not disclose his criminal history at the time of his enrollment, stating:

> Keiser University has certified that you did not make the school aware of the condition prior to enrollment. If you had, you would have been advised to change your major or remain in the same program of study and sign a release on the institution for placement due to background. You are not entitled to false certification loan discharge based on a condition that the school was not aware of at the time of enrollment. Employment in the field of study is not guaranteed and your ability to find employment in the field of study may not be used as a condition of repayment.

(AR 131.)

The Court finds that this explanation runs counter to the evidence in the administrative record.[6] Although DOE states that Keiser "certified" that Carver did not inform the school of his criminal convictions, Keiser's assertion was, in fact, an assumption. The undisputed record evidence shows that Pfeffer told DOE that Keiser did "not . . . have a file on" Carver because of its "record retention regulation . . . ." (AR 175.) Without Carver's actual record to consult, Pfeffer hypothesized that, if Carver had disclosed his felony convictions, "he would have been advised to change major" and "would have signed a release on the institution for placement due to [his] background." (*Id.*)

The record includes evidence, however, that Carver did disclose his criminal convictions to Keiser personnel before the school certified his loans. The record shows that Rosalind Wald was Carver's admissions counselor at Keiser and was involved in administering his course of study, as evidenced by: (1) her signature in a field marked "admissions counselor" on a 1997 "bookkeeping form" that shows Carver's Keiser enrollment date and major (AR 107); (2) an email to Carver in which she refers to herself as "an [a]dmissions person" (AR 82); and (3) her name on

---

[6] The defendants have certified that "Bates Stamped pages 1–233 are the full administrative record" for the seventh denial. (Doc. No. 42, PageID# 414, ¶ 10.b.)

Carver's 1998 change in status form switching his major to computer science (AR 106).[7] In an email to Carver, Wald states that Carver "absolutely" "told [her] up front about the felony[.]"[8] (AR 81.) Wald states that she "remem[bers] telling [Carver] at the time that a felony would make it difficult for [Carver] to become employed in the field" and remembers that Carver "said it was not going to stand in [his] way." (AR 82.) Wald does not state that she required Carver to sign a release form acknowledging that he had been advised against pursuing his course of study (AR 81–82), and there is no such form in the administrative record. She further states that, because she "was very respectful of confidences shared with [her,]" she "never shared with anyone else, and . . . never told anyone at Keiser what [Carver] told [her]." (AR 81, 82.)

The record thus shows that Carver informed Keiser of his criminal record before Keiser certified his eligibility to borrow federal direct. Admissions Counselor Rosalind Wald confirmed without reservation that Carver told her about his felony conviction before he enrolled. Knowing this status, Wald did not require Carver to sign a release for placement in the medical laboratory technician program. Fred Pfeffer admitted to DOE that Keiser does not have Carver's enrollment records. There is therefore no evidence in the administrative record to support a finding that Carver did not inform Keiser of his criminal background before the institution certified his student loans.

---

[7] This evidence supersedes the defendants' assertion that Wald "appears to be someone who worked at KU at some point." (Doc. No. 41, PageID# 408 n.3.)

[8] This portion of Wald and Carver's email exchange in the administrative record does not show the "from," "to," "sent," and "subject" fields that are included for the remaining emails in the same chain. (AR 81.) It is apparent from context, however, that Wald is the author of the two paragraphs at the top of page 81. (*Id.*) Even excluding these two paragraphs, Wald's earlier emails confirm that she knew about Carver's criminal record when he enrolled. In response to Carver's email asking her "to write a letter that states that you knew of my criminal record when I enrolled . . .[,]" Wald stated that she "remem[bered] telling [Carver] at the time that a felony would make it difficult for [him] to become employed in the field and . . . [he] said it was not going to stand in [his] way." (AR 82, 83.)

The fact that Wald states she did not tell anyone else at Keiser about Carver's criminal history is irrelevant to the Court's analysis. The defendants have not cited any statutory or regulatory authority requiring Carver to inform a particular person at the school other than his admissions counselor of his criminal record in order to qualify for false certification discharge, and the Court is not aware of any.

Indeed, nothing in the relevant statutory and regulatory provisions places the burden on borrowers to discover and report a disqualifying status prior to receiving loan certification. *See* 20 U.S.C. § 1087(c)(1) (2013); 34 C.F.R. § 685.215 (2013).[9] The DOE-created application form that Carver submitted in connection with the seventh denial supports a finding that it was the school's burden to determine whether Carver had a disqualifying condition before certifying his eligibility to borrow federal student loans; the application asks if "the school ask[ed]" the borrower "if the disqualifying status . . . existed" "[b]efore certifying or originating the loan[.]" (AR 95.) Further, placing this burden on the school, not the student, is in keeping with legislative history documenting § 1087(c)'s intended purpose as a tool to discourage unscrupulous schools from admitting unqualified students and leaving them with significant debt and little or no ability to pay. *See* H.R. Rep. No. 102-447, at 10 (finding that "[t]he easy assumption can no longer be made that

---

[9] Subsequent amendments to 34 C.F.R. § 685.215 also support the conclusion that the regulation does not require borrowers seeking discharge based on disqualifying conditions to certify that they independently reported their conditions to the school prior to loan origination. *Compare* 34 C.F.R. § 685.215(c)(1)(i) (2021) (requiring "a borrower requesting a discharge based on not having had a high school diploma and not having met the alternative" requirements at the time the loan was originated to certify that he or she "[r]eported not having a valid high school diploma or its equivalent at the time the loan was certified"), *with id.* § 685.215(c)(2)(i) (requiring "a borrower requesting a discharge based on a condition that would disqualify the borrower from employment in the occupation that the training program for which the borrower received the loan was intended" to certify that he or she "[d]id not meet State requirements for employment (in the student's State of residence) in the occupation that the training program for which the borrower received the loan was intended because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary").

everyone who assumes the title of 'educator' offers a quality educational program or puts the interests of students uppermost"); S. Rep. No. 102-58, at 10 (finding "that unscrupulous and dishonest school operators victimize students, leaving them with huge debts and little or no education").

The Court finds that DOE's seventh denial based on Carver's failure to inform Keiser of his disqualifying criminal record was arbitrary and capricious because it ran counter to the record evidence. The administrative record shows that Carver informed Keiser Admissions Counselor Rosalind Wald of his criminal convictions before Keiser certified his federal student loans. Keiser employee Fred Pfeffer's admission that Keiser did not retain Carver's enrollment file and his therefore speculative assertion that, if Keiser had been aware of Carver's criminal background, he would have been required to sign a release form does not support a finding otherwise. The DOE thus "failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary and capricious standard." *State Farm*, 463 U.S. at 56. The seventh denial should be reversed on this ground.

### C. The Eighth Denial

The defendants characterize DOE's reasoning in the eighth denial as "less clear" than in the seventh (Doc. No. 41, PageID# 409), and the Court agrees. DOE based its eighth denial of Carver's loan discharge application on reasoning that:

> Although, you state you did inform Keiser University of the disqualifying status before the loan(s) was certified or originated, you provided supporting documents that identified the fact that you were made aware that this would be a difficult field of study. You also provided a pamphlet that stated a background check was required for the field of study as a pre-requisite. Unfortunately, you are not entitled to false certification loan discharge.

> In the event that the supporting evidence submitted with your discharge application is insufficient for processing and/or approval, standard collection activity will resume.

(AR 185.)

Carver argues that DOE impermissibly premised its eighth denial on findings regarding what he, not Keiser, knew or believed at the time Keiser certified his loans—a factor he argues Congress did not intend DOE to consider in its loan discharge decisions. (Doc. No. 45.) Carver also points out that the referenced pamphlet was copyrighted in 2007, long after he enrolled as a student. (*Id.*) The defendants characterize the eighth denial letter's quoted reasoning as "merely summations" of Carver's arguments in support of his application and assert that, although the letter does not say so, DOE ultimately "concluded that notwithstanding [Carver's] application, he had not provided evidence of a statutory bar to employment or that [Keiser] knew of the status." (Doc. No. 41, PageID# 409.) The defendants assert that this conclusion is a "less explicitly" stated version of "identical reasoning" underlying DOE's first through sixth and ninth denials—namely, that Carver failed to provide sufficient documentation showing that his criminal convictions disqualified him from employment as a medical laboratory technician under Florida law at the time of enrollment and Keiser's awareness of that status (*Id.* at PageID# 409 n.4.)

The Court finds no support for the defendants' characterization of the eighth denial's reasoning in the administrative record or in the eighth denial letter itself.[10] The letter acknowledges Carver's position that he informed Keiser of his criminal record and states that Carver's supporting documents show (1) that he was "made aware that this would be a difficult field of study" and (2) that Carver provided a pamphlet stating that "a background check was required for the field of

---

[10] The defendants have certified that "Bates Stamped pages 1–186 are the full administrative record" for the eighth denial. (Doc. No. 42, PageID# 414, ¶ 10.a.)

study as a pre-requisite." (AR 185.) It does not state that Carver failed to show that his criminal convictions were disqualifying conditions, that Keiser knew of Carver's convictions when he enrolled, or that those convictions prevented Carver from obtaining licensing in his chosen field under Florida law.

Notes from DOE's "Debt Management Collection System (DMCS)" (Doc. No. 23-1, PageID# 78)—which the defendants submitted as part of the administrative record (AR 52, 189–90)—support the conclusion that DOE's eighth denial was based on Carver's purported knowledge that his criminal history could make it difficult for him to find employment as a medical laboratory technician and not on an interpretation of 1997 Florida law or Keiser's awareness of Carver's convictions. The DMCS notes document the review of Carver's application materials leading to the eighth denial. On November 14, 2018, a DMCS user identified as "[S]tones" wrote:

> FADS Discharge. ***RECOMMEND REJECT***. Although the Borr[ower] did inform school of disqualifying status prior to enrollment, the borr[ower] has provided an email . . . that supports the admissions counselor (Rosalind Wa[l]d) had told the borrower that because of his felony, it would be difficult to become employed in the field that the borrower had chosen. The email also states that the admissions counselor remembers the borrower stating "it was not going to stand in his way". The borrower also provided . . . a pre-requisites for the program that he had chosen, and it stated background check was required. Keiser University (pending FSA decision)[.]

(AR 52, 189–90.) On November 19, 2018, DMCS user James Farrar—a senior loan analyst at DOE (AR 56)—wrote: "***FSA agrees with the contractor's recommendation to deny DQS discharge application for the reasons listed below/J.FarrarFSA[.]"[11] (AR 52, 189.) DOE sent the eighth denial letter the following day, adopting the contractor's recommendation that the DMCS notes reflect. (AR 185.) Neither the DMCS notes nor the eighth denial letter mention Carver's

---

[11] As best the Court can tell based on the administrative record, FSA stands for federal student aid and DQS stands for disqualifying status.

failure to establish his disqualifying status under Florida law or Keiser's lack of knowledge of that status as a basis for denying Carver's application. The defendants' attempt to recast the reasons underlying the eighth denial is thus unsupported by the administrative record and unpersuasive.

DOE's stated reason for its eighth denial of Carver's false certification discharge application is that Carver was aware that his criminal record would make Keiser's medical laboratory technician program "a difficult field of study[,]" as evidenced by Wald's email stating that she remembered telling Carver this, and "a pamphlet that stated a background check was required for the field of study as a pre-requisite." (AR 185.) The defendants have not argued that these reasons survive APA review, and the Court finds that they do not. First, the pamphlet in question was copyrighted in 2007, 20 years after Carver enrolled, and is therefore irrelevant to determining what Carver or Keiser knew at the time Keiser certified his student loans. (AR 112–13.) Second, and more importantly, nothing in the applicable statute or regulations directs DOE to consider what a borrower knew or believed about his disqualifying status in determining whether a school falsely certified the borrower's eligibility to participate in federal student loan programs. *See* 20 U.S.C. § 1087(c)(1) (2018); 34 C.F.R. § 685.215 (2018). Congress mandated that "the Secretary *shall* discharge the borrower's liability" if the "student's eligibility to borrow under this part was falsely certified by the eligible institution . . . ." 20 U.S.C. § 1087(c)(1) (2018) (emphasis added). Congress enacted this provision "to strengthen controls on schools and colleges to end waste and abuse and to minimize loan defaults" H.R. Rep. No. 102-447, at 10. The statute addresses *schools*, not students, and prohibit *schools* from certifying students to receive loans for educations they can never put to use—regardless of what the students know or perceive their opportunities to be. This conclusion is borne out by DOE's own regulations, which make no

reference to a borrower's knowledge of a disqualifying condition's effects in addressing discharge for false certification. *See* 34 C.F.R. §§ 685.215(a)(1)(iii), (c) (2018).

The Court therefore finds that DOE's eighth denial of Carver's student loan discharge application was arbitrary and capricious because it "'relied on factors which Congress had not intended it to consider[.]'" *Nat'l Ass'n of Home Builders*, 551 U.S. at 658 (quoting *State Farm*, 463 U.S. at 43). The eighth denial should be reversed on this ground. While the parties' briefs argue about whether or not Florida law in 1997 barred Carver from employment as a medical laboratory technician, the Court has found that DOE did not rely on Florida law as a reason for the seventh and eighth denials. It is well established that the Court "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Ky. Waterways All.*, 540 F.3d at 474 (quoting *State Farm*, 463 U.S. at 43). The question of whether Florida law prohibited Carver's employment is therefore not properly before the Court.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion for judgment on the administrative record (Doc. No. 40) be DENIED and Carver's motion for judgment on the administrative record (Doc. No. 44) be GRANTED. While Carver's complaint requests injunctive and declaratory relief discharging his loans, this Court is without authority to issue such relief. *See McGuire v. Duncan*, 138 F. Supp. 3d 1076, 1086 (E.D. Mo. 2015) (finding that "an injunction or declaratory relief is inappropriate" in administrative appeals from false discharge application denials because 20 U.S.C. § 1082(a)(2) "prohibit[s] injunction or other similar process from being issued against the Secretary"). The Magistrate Judge therefore RECOMMENDS that the Court REMAND this action to the Secretary for further proceedings consistent with the Court's decision.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 3rd day of February, 2021.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge